**<u>ATTACHMENT 1</u>**

Ms. Wilson's Checks

`

5ᵗʰ Charge from Credit Union

RACHEL L WILSON
LIC. 035512713
322 ORANGE LANE PH. 866-943-7325
PORT ISABEL, TEXAS 78578

DATE 11/9/01                    1509

PAY TO THE
ORDER OF Matrix Financial Services   $ 840.87/100

eight hundred forty dollars 87/100

BROWNSVILLE TEACHER'S CREDIT UNION
(956) 541-0946
2400 PRICE ROAD, BROWNSVILLE, TX 78521

Loan # 2035482                    Rachel Wilson

⑈314478093⑈ 000327⑈1000⑈ 1509  ⑈000008408⑈

£140-0072-1
TRACE • 1265 PKT • 13
12/13/11 9 ROL
42003540

CREDIT TO ACCT OF
NAMED PAYEE WITH-
OUT RECOURSE.
AS----MENT OF PAYEES
MENT GUARANTEED BY
BANK ONE, NA

06#80000700

NO 01 15
122100024
BANK ONE, NA
PHOENIX, ARIZONA

Check:   1509        Amount:   $840.87
Date:    11-19-2001  Sequence: 83268790
Credit Union:   Brownsville Teachers CU
Attn:   OSCAR

NOV PYMT

From: SOUTHWEST CORPORATE.    To: wT9.19565426322 75184 01  Msg#42312.0.2          05/06/2002 17:05:26  Page 1 of 1



RACHEL L. WILSON
LIC. 09367279
322 ORANGE LANE PH. 956-943-7325
PORT ISABEL, TEXAS 78578

50-7809/3149

DATE 7/1/02

1581

PAY TO THE ORDER OF *Matrix Financial Service*    $ 840.87

*eight hundred forty dollars 87/100* DOLLARS

BROWNSVILLE TEACHER'S CREDIT UNION
(956) 541-3196
2408 PRICE ROAD  BROWNSVILLE, TX 78521

FOR JAN loan # 203482              *Rachel W*

⑆314978093⑆ ⑆0003271000⑆ 1581  ⑆000008408⑆

Check:  1581        Amount:    $840.87
Date:  02 04 2002    Sequence:  93999260
Credit Union:  BROWNSVILLE TEACHERS CU
Attn:  sandy

CREDIT TO ACCT OF NAMED PAYEE WITHOUT PREJUDICE ABSENCE OF ENDORSEMENT GUARANTEED BY BANK ONE, NA

121

From: SOUTHWEST CORPORATE    To: wT9_19565426322 75184 02    Msg#42305.0.2

05/06/2002 17:02:20  Page 1 of 1





SR 02.01.02    Check # 197731416

RACHEL L. WILSON
LIC. 0036727/0                                           55-7809/3149
322 ORANGE LANE PH: 956-943-7325
PORT ISABEL, TEXAS 78578

DATE 2/25/02                    1622

PAY TO THE
ORDER OF   Matrix Financial        $53        $ 840.87

eight hundred  forty                          8/100 DOLLARS

BROWNSVILLE TEACHER'S CREDIT UNION              EXPRESS
(956) 541-9154
2425 PRICE ROAD  BROWNSVILLE, TX 78521

FOR LOAN # 2035482              Rachel Wilson

⑈31497809⑈:0003271000⑈ 1622  ⑈000008408⑈

CREDIT TO ACCT OF
NAMED PAYEE WITH
- OUT  PREJUDICE
ABSENCE OF ENDOSE-
MENT GUARANTEED
BANK ONE, NA

DEBBIE MIDKIFF
ACQUISITION SUPERVISOR
MATRIX FINANCIAL SERVICES CORP

PAY TO THE ORDER OF
WITHOUT RECOURSE
MATRIX FINANCIAL SERVICES CORP

Check:   1622          Amount:        $040.87
Date:   03 11 2002    Sequence:  71265930

Credit Union:  BROWNSVILLE TEACHERS CU

Attn:  sandy

JAN PYMT

122

**<u>ATTACHMENT 2</u>**

Ms. Wilson's Correspondence



Dat Notice : 04/16/02

RACHEL WILSON

P.O. BOX 2042
SPI, TX 78597

RE:        Loan Number : 2035482
      Property Address : 202W CORA LEE
                         SOUTH PADRE ISLAND, TX 78597

Dear Mortgagor:

As you have previously been advised, the servicing of your mortgage loan has been transferred form Matrix Financial Services Corporation, therefore, we are returning your check number 1665 in the amount of $840.87 so that you may forward it to your new servicer.

If you have any questions regarding this matter, please contact our Customer Service Department at 1-800-243-6372.

Sincerely,
Customer Service Department
Matrix Financial Services Corporation

Enclosure

*Mailing Address - PO Box 2042 - SPI*

RACHEL L. WILSON AND
CHARLES A. BROMMER
202 W CORA LEE - PO BOX 2042
SOUTH PADRE ISLAND, TX 78597

88-7809/3149

1665

Date 4/9/02

Pay to the order of    *Matrix Financial*    $ 840.87

*Eight Hundred Forty*    Dollars

BTCU
YOUR COMMUNITY CREDIT UNION
8455 PRICE ROAD
BROWNSVILLE, TEXAS, 78521-2497

Loan# 2035482

Rachel Wilson

⑈314978093⑈0003271000⑈ 1665

*Received 4/20/02*

*Letter dated 4/16/02*

6

May-06-02 02:46P                                                    P.02

April 15, 2002

Chase
Phone# 800-848-9380
Fax# 614-422-7575

Dear Sir or Madam:

Upon review of my credit report, both Equifax and Experian have reported a past
due amount of $442.00. on loan # 9090048578 for the property of 322 Orange Lane
Laguna Vista, TX. When I called today to your customer service at 800-848-9380,
Ms. Holly Freeman informed me that the loan was not delinquent and that no
charges were due. This matter is causing me to have difficulty on another property I
am attempting to refinance. Please research and remove this delinquency and send
me confirmation that it has been done.

On another matter, I am told by my mortgage/loan officer that my current home on
202 West Cora Lee, SPI, TX has been sold from Matrix to Chase as of last February.
I asked Ms Freeman to look into this by my SSN# 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 and she informs me
that I am in the system as having only one loan from Chase. I have not received any
notices from Matrix that my loan was sold. I am going to follow up with Matrix but
I would appreciate it if you could provide any information regarding this transfer in
writing so I can attach it to my refinance application.

Sincerely,

Rachel L. Wilton-Brommer
PO Box 2042
South Padre Island, TX 78597

Home 965-761-3105   Cell  956-371-2582

4

**<u>ATTACHMENT 3</u>**

RESPA §2605

Westlaw.

12 U.S.C.A. § 2605

**Effective: September 30, 1996**

UNITED STATES CODE ANNOTATED
TITLE 12. BANKS AND BANKING
**CHAPTER 27--REAL ESTATE SETTLEMENT PROCEDURES**
➔ **§ 2605. Servicing of mortgage loans and administration of escrow accounts**

(a) Disclosure to applicant relating to assignment, sale, or transfer of loan servicing

Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

(b) Notice by transferor of loan servicing at time of transfer

  (1) Notice requirement

  Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person.

  (2) Time of notice

    (A) In general

    Except as provided under subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

    (B) Exception for certain proceedings

    The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

      (i) termination of the contract for servicing the loan for cause;

      (ii) commencement of proceedings for bankruptcy of the servicer; or

      (iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

    (C) Exception for notice provided at closing

    The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

  (3) Contents of notice

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

12 U.S.C.A. § 2605

The notice required under paragraph (1) shall include the following information:

**(A)** The effective date of transfer of the servicing described in such paragraph.

**(B)** The name, address, and toll-free or collect call telephone number of the transferee servicer.

**(C)** A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

**(D)** The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

**(E)** The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

**(F)** Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage.

**(G)** A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

(c) Notice by transferee of loan servicing at time of transfer

(1) Notice requirement

Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

(2) Time of notice

(A) In general

Except as provided in subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

**(i)** termination of the contract for servicing the loan for cause;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

12 U.S.C.A. § 2605

(ii) commencement of proceedings for bankruptcy of the servicer; or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

(3) Contents of notice

Any notice required under paragraph (1) shall include the information described in subsection (b)(3) of this section.

(d) Treatment of loan payments during transfer period

During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.

(e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

12 U.S.C.A. § 2605

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating

During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

(f) Damages and costs

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of--

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

(2) Class actions

In the case of a class action, an amount equal to the sum of--

(A) any actual damages to each of the borrowers in the class as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

12 U.S.C.A. § 2605

requirements of this section, in an amount not greater than $1,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--

(i) $500,000; or

(ii) 1 percent of the net worth of the servicer.

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

(4) Nonliability

A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

(g) Administration of escrow accounts

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

(h) Preemption of conflicting State laws

Notwithstanding any provision of any law or regulation of any State, a person who makes a federally related mortgage loan or a servicer shall be considered to have complied with the provisions of any such State law or regulation requiring notice to a borrower at the time of application for a loan or transfer of the servicing of a loan if such person or servicer complies with the requirements under this section regarding timing, content, and procedures for notification of the borrower.

(i) Definitions

For purposes of this section:

(1) Effective date of transfer

The term "effective date of transfer" means the date on which the mortgage payment of a borrower is first due to the transferee servicer of a mortgage loan pursuant to the assignment, sale, or transfer of the servicing of the mortgage loan.

(2) Servicer

The term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

12 U.S.C.A. § 2605

if such person also services the loan). The term does not include--

**(A)** the Federal Deposit Insurance Corporation or the Resolution Trust Corporation, in connection with assets acquired, assigned, sold, or transferred pursuant to section 1823(c) of this title or as receiver or conservator of an insured depository institution; and

**(B)** the Government National Mortgage Association, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Resolution Trust Corporation, or the Federal Deposit Insurance Corporation, in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

**(i)** termination of the contract for servicing the loan for cause;

**(ii)** commencement of proceedings for bankruptcy of the servicer; or

**(iii)** commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(3) Servicing

The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

(j) Transition

(1) Originator liability

A person who makes a federally related mortgage loan shall not be liable to a borrower because of a failure of such person to comply with subsection (a) of this section with respect to an application for a loan made by the borrower before the regulations referred to in paragraph (3) take effect.

(2) Servicer liability

A servicer of a federally related mortgage loan shall not be liable to a borrower because of a failure of the servicer to perform any duty under subsection (b), (c), (d), or (e) of this section that arises before the regulations referred to in paragraph (3) take effect.

(3) Regulations and effective date

The Secretary shall, by regulations that shall take effect not later than April 20, 1991, establish any requirements necessary to carry out this section. Such regulations shall include the model disclosure statement required under subsection (a)(2) of this section.

Current through P.L. 109-40, approved 07-28-05

Copr. © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Westlaw.

12 U.S.C.A. § 2605

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**ATTACHMENT 4**

Plaintiff's Original Petition

CAUSE NO. *2004-04-1944-A*

| | | |
|---|---|---|
| RACHEL WILSON and | § | IN THE DISTRICT COURT OF |
| CHARLES BROMMER | § | |
| *Plaintiffs* | § | *07* JUDICIAL DISTRICT |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| CHASE MANHATTAN MORTGAGE | § | |
| CORPORATION, and | § | |
| MATRIX FINANCIAL SERVICES | | |
| CORPORATION | | |
| *Defendants* | | |

FILED *11.20* O'CLOCK
AURORA DE LA GARZA DIST. CLERK
APR 0 8 2004
DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, **Rachel Wilson and Charles Brommer** and file this Plaintiffs' Original Petition and would respectfully show as follows:

### I.

### DISCOVERY CONTROL PLAN

Plaintiffs intend to conduct discovery pursuant to a level three discovery control plan.

### II.

### PARTIES

Plaintiff, **RACHEL WILSON**, is an individual residing in Cameron County, Texas, at 202 W. Cora Lee, South Padre Island, Texas.

Plaintiff, **CHARLES BROMMER**, is an individual residing in Cameron County, Texas, at 202 W. Cora Lee, South Padre Island, Texas.

Defendant, **CHASE MANHATTAN MORTGAGE CORPORATION**, (hereinafter sometimes referred to as Defendant "CHASE"), is a New York Corporation doing business in the State of Texas during all relevant times hereto, and may be served with this petition and

citation by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Dallas, Texas 75201. Service will be obtained via private process server.

Defendant, **MATRIX FINANCIAL SERVICES CORPORATION,** (hereinafter sometimes referred to as Defendant "MATRIX"), is an Arizona Corporation doing business in the State of Texas during all relevant times hereto, and may be served with this petition and citation by serving its registered agent, CT Corporation System, 350 N. St. Paul St., Dallas, Texas 75201. Service will be obtained via private process server.

## III.

### JURISDICTION

The Court has jurisdiction over this claim because it involves a claim in excess of the minimal jurisdictional limits of this court and all parties live or do business in the State of Texas.

## IV.

### VENUE

Venue in Cameron County is mandatory pursuant to Tex. Civ. Prac. and Rem. Code Sec. 15.011 because this case involves real property located in this county. Further, venue is proper because all or a substantial part of the events or omissions giving rise to the claim in question occurred in this county. Tex. Civ. Prac. and Rem. Code Sec. 15.002(a)

## V.

### FACTS

RACHEL WILSON and CHARLES BROMMER currently own the property located at 202 West Cora Lee, South Padre Island, TX 78597, (hereinafter sometimes referred to as "the property"). Both Plaintiffs Wilson and Brommer (pro forma) are listed on a Deed of Trust with

Matrix securing the loan for the property (hereinafter sometimes referred to as the note or the lien or the loan). On April 12, 2002, Wilson found out that her credit history and credit report contained negative statements because of a derogatory account with Chase Manhattan Mortgage Corporation.

Because Wilson was current on the only note she knew about with Defendant Chase (Chase held a note securing another property Wilson owned), Wilson began to inquire about the derogatory account. At this time, Wilson was informed that Matrix, the original lien holder to the property, sold the note to Chase. Wilson did not receive the proper RESPA notification from Matrix that the note had been sold to Chase. Likewise, she did not receive the proper RESPA notification from Chase that it had purchased the note or that Chase was now servicing the loan.

On April 15, 2002, Wilson wrote Chase asking for her credit report to be corrected. The request from Chase for the credit report was received via mail at Plaintiff's correct mailing address which is P.O. Box. 2042, South Padre Island, Texas 78597.

On May 8, 2002, Wilson spoke to a Chase representative and was informed that she did have two loans with Chase and that the property at 202 W. Cora Lee was to be foreclosed on for failure to make payments. Although Chase had Wilson's correct mailing address, Chase never sent any information regarding payment for the note or servicing of the loan as required by RESPA.

Wilson informed Chase that she was unaware that Chase had purchased the note, but she had been sending payments to Matrix. In an effort to save her credit history, Wilson attempted on numerous occasions to have Chase rectify the problems associated with the impending foreclosure and associated negative credit reporting. Additionally, Wilson attempted on multiple occasions over time to resolve payment issues and mailing address issues with Chase.

3

Nevertheless, Chase wrongfully foreclosed on the property causing damages to the Plaintiff as set forth below.

## VI.

## CAUSES OF ACTION AGAINST DEFENDANTS

### Wrongful Foreclosure

Plaintiffs aver that Defendant Chase wrongfully foreclosed on the property because Plaintiffs were not actually in default on her mortgage obligations when the foreclosure action was initiated. As stated earlier, Plaintiffs were never given notice that Chase had purchased the note from Matrix. Because proper notification pursuant to the Texas Property Code was never given to the Plaintiffs, the foreclosure proceedings instituted on the property were wrongful.

Pursuant to Texas Property Code § 51.002(b)(3), Chase was required to give Plaintiffs notice that the sale of their property was to take place at a specific date and time. This notice was never given by Chase to Plaintiffs. In fact, Chase had the Wilson's proper mailing address yet they negligently failed to send any notice to Plaintiffs' proper address.

Further, prior to any notice sent pursuant to §51.002(b)(3), Chase was required to send notice of default on the loan to Plaintiffs pursuant to Texas Property Code §51.002(d). Texas law requires that Chase advise Plaintiffs of the default in the note and provide them a 20 day grace period to cure any default. Defendant Chase did not notify Plaintiffs of a default and did not grant them the statutorily required grace period in which to cure.

### Negligence

CHASE, and their agents, servants, and employees knew, or in the exercise of ordinary care, should have known that they were interfering with Plaintiffs' financial and business

4

stability and wellbeing.  In particular, Chase negligently failed to notify Plaintiffs of the transfer of the loan from Matrix.  Chase's negligence continued with their failure to inform Plaintiffs of crucial information regarding the loan, such as the loan number and payment address. Furthermore, despite Wilson's repeated attempts to resolve mailing address issues, Chase negligently continued sending correspondence to the wrong address.  These negligent acts led to the wrongful foreclosure of the property and related damages.

Chase had a duty to exercise ordinary care so as not to damage Plaintiffs.  To the extent they breached this duty, Plaintiffs seek their full damages, which are within the jurisdictional limits of the Court.

MATRIX, and their agents, servants, and employees knew, or in the exercise of ordinary care, should have known that they were interfering with Plaintiffs' financial and business stability and wellbeing.  In particular, Matrix negligently failed to notify Plaintiffs that the loan was transferred to Chase.  This negligence contributed to the wrongful foreclosure of the property and related damages.

Matrix had a duty to exercise ordinary care so as not to damage Plaintiffs.  To the extent they breached this duty, Plaintiffs seeks their full damages, which are within the jurisdictional limits of the Court.

## Breach of Contract

Plaintiffs entered into a mortgage agreement with Matrix Financial Services Corporation. Sometime thereafter, Chase assumed this obligation.  As such, Chase accepted the rights and responsibilities contained within this mortgage agreement.  Actions for default and non-judicial foreclosure are measures that were only to be used in situations where Plaintiffs are actually in default.  Further, if Plaintiffs actually were in default on any situation, proper notice should be

5

provided as set forth in the Texas Property Code. Chase breached this contract by foreclosing on the property and Plaintiffs have been damaged as a proximate cause of Chase's actions in an amount within the jurisdictional limits of this court.

### Defamation, Business Disparagement and Slander of Title

Chase knowingly and intentionally published, or caused to be published by others, disparaging words about Plaintiffs' economic interests, including information in reference to the title to her property. Those statements were published to the public. In fact, Wilson found out about an attempted foreclosure on her property after being advised by a friend who read the disparaging words in the local newspaper. Those published statements were defamatory, false, published with malice, and communicated without privilege.

As a result of the publication, Plaintiffs suffered pecuniary losses to their personal and business interests that are directly attributable to the false communications.

### Violation of the Texas Deceptive Trade Practices Act

Plaintiffs are "consumers" as defined by the DTPA, in that Defendant provided financing for the transaction and sought to benefit from the transaction.

Chase knowingly or intentionally engaged in false, misleading, or deceptive practices in the transaction described above, which were producing causes of damages to Plaintiffs in that:

a) Defendant represented that services had characteristics, uses, or benefits they did not have, or that a person had approval, status, affiliation, or connection she did not have;

b) Defendant represented that services were of a particular standard, quality, or grade, and they were of another;

6

c) Defendant disparaged the goods, services, or business of another by false or misleading representation of facts;

d) Defendant represented that an agreement conferred or involved rights, remedies, or obligations that it did not have or involve, or that were prohibited by law;

e) Defendant represented that work or services had been performed when the work or services were not performed.

Defendant Chase engaged knowingly or intentionally in unconscionable conduct or in a course of conduct in the transaction with Plaintiffs by failing to send proper notice to Plaintiffs at the correct address after repeated attempts by Wilson to correct the mailing problem. Further, after failing to correct the address problem and foreclosing on the property, Chase made the Plaintiffs pay attorney's fees and late fees to have the loan reinstated. Defendant's conduct took advantage of the lack of Plaintiffs' ability to rectify this situation to a grossly unfair degree so as to be a producing cause of damages to Plaintiffs.

As a result of Chase's conduct, Plaintiffs suffered considerable damage to their financial situation, both personally and to their business. In addition to the damages affecting Plaintiffs' financial well-being, Plaintiffs have also suffered mental anguish as a result of Chase's conduct.

To pursue this claim against Defendants, Plaintiffs have had to retain Michael Rodriguez as their attorney and have agreed to pay his law firm reasonable fees for the services in maintaining Plaintiffs' claims until final judgment. Plaintiffs are entitled to recover those fees from Defendant under Section 17.50(d) of the Texas Business and Commerce Code.