# NOTE

September 14, 2001                South Padre Island                              Texas
[Date]                                        [City]                                              [State]

202 West Cora Lee, South Padre Island, TX 78597

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 128,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Matrix Financial Services Corporation, an ARIZONA Corporation**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st     day of each month beginning on    November 1, 2001     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     October 1, 2031     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 78144 Phoenix, AZ 85062-8144
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 840.87

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

2035482

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for Texas

-5N(TX) (0011)                    Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                        Initials:



EXHIBIT

tabbies'

1

MATX 16

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

2035482

MATX 17

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
Rachel   Wilson                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

2035482

 -5N(TX) (0011)                 Page 3 of 3                 Form 3200 1/01

MATX 18

| H. Settlement Agent: | Rio Grande Valley Abstract Co., Inc. (956) 542-4367 | | | | |
|---|---|---|---|---|---|
| Place of Settlement: | 5800 Padre Boulevard, South Padre Island, TX 78597 | | | TIN: | 74-2475659 |
| I. Settlement Date: | 9/14/01 | | Proration Date: | 9/14/01 | |

| **J. Summary of Borrower's Transaction** | | | **K. Summary of Seller's Transaction** | |
|---|---|---|---|---|
| 100. | Gross amount due from borrower: | | 400. | Gross amount due to seller: | |
| 101. | Contract sales price | | 401. | Contract sales price | |
| 102. | Personal property | | 402. | Personal property | |
| 103. | Settlement charges to borrower (line 1400) | 4,619.13 | 403. | | |
| 104. | Payoff | 125,356.44 | 404. | | |
| 105. | | | 405. | | |
| Adjustments for items paid by seller in advance: | | | Adjustments for items paid by seller in advance: | | |
| 106. | City/town taxes | | 406. | City/town taxes | |
| 107. | County taxes | | 407. | County taxes | |
| 108. | Assessments | | 408. | Assessments | |
| 109. | School Taxes | | 409. | School Taxes | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 120. | Gross amount due from borrower: | 129,975.57 | 420. | Gross amount due to seller: | 0.00 |
| 200. | Amounts paid by or in behalf of the borrower: | | 500. | Reduction in amount due to seller: | |
| 201. | Deposit or earnest money | | 501. | Excess deposit (see instructions) | |
| 202. | Principal amount of new loan(s) | 128,000.00 | 502. | Settlement charges to seller (line 1400) | 0.00 |
| 203. | Existing loan(s) taken subject to | | 503. | Existing loan(s) taken subject to | |
| 204. | | | 504. | Payoff of first mortgage loan | |
| 205. | | | 505. | Payoff of second mortgage loan | |
| 206. | Option Fee (Item 7D of Contract) | | 506. | Option Fee (Item 7D of Contract) | |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| Adjustments for items unpaid by seller: | | | Adjustments for items unpaid by seller: | | |
| 210. | City/town taxes | | 510. | City/town taxes | |
| 211. | County taxes | | 511. | County taxes | |
| 212. | Assessments | | 512. | Assessments | |
| 213. | School Taxes | | 513. | School Taxes | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. | Total paid by/for borrower: | 128,000.00 | 520. | Total reduction in amount due seller: | 0.00 |
| 300. | Cash at settlement from/to borrower: | | 600. | Cash at settlement to/from seller: | |
| 301. | Gross amount due from borrower (line 120) | 129,975.57 | 601. | Gross amount due to seller (line 420) | 0.00 |
| 302. | Less amount paid by/for borrower (line 220) | 128,000.00 | 602. | Less total reduction in amount due seller(line 520) | 0.00 |
| 303. | CASH (X)FROM ()TO BORROWER | 1,975.57 | 603. | CASH ()FROM ()TO SELLER | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.
SELLER INSTRUCTION - if this real estate was your principle residence, file item 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Rio Grande Valley Abstract Co., Inc. (956) 542-4367 with your correct taxpayer identification number.
If you do not provide Rio Grande Valley Abstract Co., Inc. (956) 542-4367 with your correct taxpayer identification number, you may be subject to civil or criminal penalties.

**EXHIBIT**

2

tables

MATX  36

| | | | | |
|---|---|---|---|---|
| 808. | Flood Certification Fee | to | | |
| 809. | Administration Fee | to   MATRIX FINANCIAL SERVICES CORPORATION | 575.00 | |
| 810. | Tax Service Fee | to   MATRIX FINANCIAL SERVICES CORPORATION | 64.00 | |
| 811. | Broker Processing Fee | to   INTERCOASTAL MORTGAGE | 250.00 | |
| 812. | Broker courier Fee | to   INTERCOASTAL MORTGAGE | 50.00 | |
| 813. | Escrow Waiver Fee | to   INTERCOASTAL MORTGAGE | 320.00 | |
| 814. | Yield Spread Differential (.833%) | to   INTERCOASTAL MORTGAGE          POCL 1066.24 | | |
| 815. | | | | |
| 900. | Items required by lender to be paid in advance | | | |
| 901. | Interest from     9/19/01   to  10/1/01     at $24.4442/day  for 12 days. | | 293.33 | |
| 902. | Mortgage insurance premium for | | | |
| 903. | Hazard insurance premium for        1 yrs.             to Roy Garcia Insurance | | 898.00 | |
| 904. | Flood Insurance                  1 yrs.             to Roy Garcia Insurance | | 290.00 | |
| 905. | | | | |
| 1000. | Reserves deposited with lender | | | |
| 1001. | Hazard insurance | | | |
| 1002. | Mortgage Insurance | | | |
| 1003. | City property taxes | | | |
| 1004. | County property taxes | | | |
| 1005. | Annual assessments (maint.) | | | |
| 1006. | School Tax Reserves | | | |
| 1007. | | | | |
| 1008. | | | | |
| 1009. | Aggregate Adjustment | | | |
| 1100. | Title charges | | | |
| 1101. | Settlement or closing fee | | | |
| 1102. | Abstract or title search | | | |
| 1103. | Title examination | | | |
| 1104. | Title insurance binder | | | |
| 1105. | Document preparation       to   Gregg & Valby | | 100.00 | |
| 1106. | Notary fees | | | |
| 1107. | Attorney's fees to | | | |
| | Includes above items no.: | | | |
| 1108. | Title insurance          to   Rio Grande Valley Abstract Co., Inc. | | 1,243.00 | |
| | includes above items no.: | | | |
| 1109. | Lender's coverage         $128,000.00              $1,243.00 | | | |
| 1110. | Owner's coverage | | | |
| 1111. | Escrow Fee            to   Rio Grande Valley Abstract Co., Inc. | | 125.00 | |
| 1112. | Tax Service           to   RGV Tax Service, Inc. | | 43.30 | |
| 1113. | Courier              to   Rio Grande Valley Abstract Co., Inc. | | 35.00 | |
| 1114. | R8 Credit on title policy      to   Rio Grande Valley Abstract Co., Inc. | | (454.00) | |
| 1200. | Government recording and transfer charges | | | |
| 1201. | Recording fees:         Mortgage $43.00  Release $13.00 | | 56.00 | |
| 1202. | City/county tax/stamps: | | | |
| 1203. | State tax/stamps: | | | |
| 1204. | | | | |
| 1205. | | | | |
| 1206. | | | | |
| 1300. | Additional settlement charges | | | |
| 1301. | Survey | | | |
| 1302. | Pest inspection | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | | 4,619.13 | |

MATX 37

**CERTIFICATION: I** have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____          _____
RACHEL WILSON

_____          _____
CHARLES BROMMER

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____          _____9-14-01_____
Rio Grande Valley Abstract Co., Inc.                    Date

**SELLER'S AND/OR PURCHASER'S STATEMENT** Seller's and Purchaser's signature hereon acknowledges his/their approval of tax prorations and signifies their understanding that prorations were based on taxes for the preceding year, or estimates for the current year, and in the event of any change for the current year, all necessary adjustments must be made between Seller and Purchaser; likewise any default in delinquent taxes will be reimbursed to Title Company by the Seller.

Title Company, in its capacity as Escrow Agent, is and has been authorized to deposit all funds it receives in this transaction in any financial institution, whether affiliated or not. Such financial institution may provide Title Company computer accounting and audit services directly or through a separate entity which, if affiliated with Title Company, may charge the financial institution reasonable and proper compensation therefore and retain any profits therefrom. Any escrow fees paid by any party involved in this transaction shall only be for checkwriting and input to the computers, but not for aforesaid accounting and audit services. Title Company shall not be liable for any interest or other charges on the earnest money and shall be under no duty to invest or reinvest funds held by it at any time. Sellers and Purchasers hereby acknowledge and consent to the deposit of the escrow money in financial institutions with which Title Company has or may have other banking relationships and further consent to the retention by Title Company and/or its affiliates of any and all benefits (including advantageous interest rates on loans) Title Company and/or its affiliates may receive from such financial institutions by reason of their maintenance of said escrow accounts.

The parties have read the above sentences, recognize that the recitations herein are material, agree to same, and recognize Title Company is relying on the same.
(Purchasers/Borrowers)                                      Sellers

_____          _____
RACHEL WILSON

_____          _____
CHARLES BROMMER

**WARNING: It is** a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18: U.S. Code Section 1001 and Section 1010.

MATX 38

Return To:
**Matrix Financial Services Corp.**
**P. O. Box 38350 Phoenix, AZ 85069**

RIO GRANDE VALLEY ABSTRACT
GF# 160133 SPI

The Undersigned hereby certifies the following
to be a true and correct copy of the original.
Rio Grande Valley Abstract Co., Inc.

By: _Sandra Moncivez_

Prepared By:
**Matrix Financial Services Corporation**

——————————————— [Space Above This Line For Recording Data] ———————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated     **September 14, 2001**
together with all Riders to this document.
**(B) "Borrower"** is **Rachel  Wilson, joined here pro forma by her spouse, Charles Brommer**

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is **Matrix Financial Services Corporation**

Lender is a **Corporation**
organized and existing under the laws of                **ARIZONA**

**2035482**

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3044  1/01

VMP®  -6(TX) (0005)
Page 1 of 16        Initials:
        VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT
3

Lender's address is 2133 West Peoria Avenue Phoenix, AZ 85029

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is Scott R. Valby

. Trustee's address is

1700 West Loop South, Suite 260 Houston, TX 77027

**(E) "Note"** means the promissory note signed by Borrower and dated    September 14, 2001
The Note states that Borrower owes Lender One Hundred Twenty Eight Thousand and
00/100----------------------------------------------------------------- Dollars
(U.S. $128,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    October 1, 2031        .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

2035482

VMP®  -6(TX) (0005)                    Page 2 of 16                    Initials:          Form 3044  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the     **County**     of     **Cameron**     :

    [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

**Lot Number Fifteen (15), Block Number One Hundred Seventy Four (174), Padre Beach, Section XI, a Subdivision in Cameron County, Texas, according to Map of Said Subdivision Recorded in Volume 15, Page 41 of the Map Records of Cameron County, Texas.**

Parcel ID Number:     **67-6400-1740-0150000**     which currently has the address of
            **202 West Cora Lee**                   [Street]
    **South Padre Island**     [City], Texas     **78597**     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

2035482

MATX 21

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

2035482

-6(TX) (0005)    Page 4 of 16    Initials: ____    Form 3044  1/01

MATX 22

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



MATX 23

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

2035482



**MATX 24**

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

2035482



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement, or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

2035482



MATX 27

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

2035482



**MATX 28**

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

2035482

Ⓥ -6(TX) (0005)          Page 11 of 16          Initials:           Form 3044  1/01

MATX 29

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

2035482

-6(TX) (0005)                Page 12 of 16                Initials                 Form 3044   1/01

**MATX  30**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.



MATX 31

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.** Check box as applicable:

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☒ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

2035482

-6(TX) (0005)    Page 14 of 16    Initials:    Form 3044  1/01

MATX 32

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Rachel    Wilson              -Borrower

_____          _____ (Seal)
                                          Charles   Brommer             -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                 -Borrower

2035482

VMP-6(TX) (0005)                Page 15 of 16                Form 3044   1/01

MATX 33

STATE OF TEXAS

County of _Cameron_

Before me _the undersigned_            on this day personally appeared

known to me (or proved to me on the oath of
or through _drivers license_ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

    Given under my hand and seal of office this _14_ day of _September, 2001_.

(Seal)



_Jacqui H. Dempsey_
Notary Public

My Commission Expires:

2035482

-6(TX) (0005)             Page 16 of 16        Initials: _____      Form 3044  1/01

WILSON
Loan Number 2035482

# RENEWAL AND EXTENSION EXHIBIT

DEED OF TRUST DATED NOVEMBER 17, 2000, RECORDED IN VOLUME 6677, PAGE 11, OFFICIAL RECORDS OF CAMERON COUNTY, TEXAS, SECURING PROMISSORY NOTE OF EVEN DATE THEREWITH IN THE ORIGINAL PRINCIPAL SUM OF $123,500.00, EXECUTED BY RACHEL WILSON, AN UNMARRIED PERSON, PAYABLE TO THE ORDER OF PRINCIPAL RESIDENTIAL MORTGAGE, INC.

January 15, 2002

Rachel Wilson
202 W. Cora Lee
South Padre Island TX  78597-7515
||iiil|liil|lilil||iiiliiiil|liiil|lilil|liiiil|lilil||

RE:  Matrix Loan Number: 2035482
     Chase Loan Number: 1977234116

Dear Borrower(s):

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, will be transferred from Matrix Financial Services Corporation (Matrix), to Chase Manhattan Mortgage Corporation (Chase) effective February 1, 2002.

The transfer of servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice 15 days before the effective date of transfer. Your new servicer must also send you notice no later than 15 days after the transfer.

Beginning February 1, 2002, please use the following information for payments:

Payments:
Chase Manhattan Mortgage Corporation
Attn: Payment Processing
P.O. Box 78420
Phoenix, AZ 85062-8420

Matrix will stop accepting payments from you on January 31, 2002. Chase Manhattan Mortgage Corporation will begin accepting payments from you on February 1, 2002. Send all payments due on or after February 1, 2002 to Chase at the payment address shown above. Please note that all payoffs should be mailed to the following address:

Chase Manhattan Mortgage Corporation
Attn: Payoff Department - PP7456
3415 Vision Drive
Columbus, OH 43219

If your payments are currently being drafted from your checking or savings account, or you are on the Paymap bi-saver program, these services will continue with Chase. We will be notifying your insurance and taxing authorities of this change. If your payments include premiums for optional life, accidental death or disability insurance, please be advised that these coverage's should transfer to Chase. Please continue to remit your total payment to Chase unless instructed to do otherwise.

If you have any questions with respect to the servicing of your loan after January 31, 2002, please contact Chase's Customer Care at P.O. Box 24696, Columbus, OH 43224-0696, or by calling 1-800-848-9136 between the hours of 8:00 a.m. to 8:00 p.m. ET Monday through Friday.

EXHIBIT
4

MATX 234

You will receive a year-end statement from Matrix by January 31, 2003 for the period of time we serviced your loan in 2002. Chase will provide you with a similar statement from the transfer date to December 31, 2002. Please combine both statements to complete your tax return.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "Qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your letter. A "Qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer which includes your name and account number and your reasons for the request.

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60 business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstance where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Should you have any questions regarding this transfer, please do not hesitate to contact our Customer Service Department at 1-800-243-6372, Monday through Friday between the hours of 7:30 A.M. and 4:30 P.M., Mountain Standard Time. After January 31, 2002, you may contact the Customer Care Department of Chase at 1-800-848-9136 between the hours of 8:00 a.m. and 8:00 p.m. Monday through Friday Eastern Time.

Sincerely,


Customer Service Department
Real Estate Loan Servicing


MATX 235

```
                                LOAN HISTORY Y-T-D INV F17 CAT 049 INV# 1678379594 TI3 12/31/01
                                                                                    PAGE  3467
LN#    2035482  RACHEL WILSON
                            202 W CORA LEE              SOUTH PADRE ISLAND  TX 78597   EMP 0  POFO
                                                                                      0000

1ST MTGE PRIN 2ND MTGE PRIN  ESC BAL    REST ESC    SUSPENSE   ADV BAL   REPL RES  HUD BAL     LC BAL  INT DUE DUE DATE HUD PRT OF M
127,892.46           .00         .00          .00       .00   1,155.45      .00       .00      42.04     .00 12-01-01    .00 09 4

 P & I 1ST  P&I 2ND  CO TAX CITY TAX  HAZ INS   M I P    LIEN   BSC A & H   LIFE    MISC    REP RES  TOT PAYMT INT RATE DT BM
 840.87       .00      .00    .00       .01     .00      .00   .00 .00 .00  .00 .00  .00 .00   .00    840.88 .0687500  1 1

  1ST ORIG MTG  2ND ORIG MTG    PRIN BAL BEG  INT IND  CAP FLAG  MTGR SSN       DEF INT BAL   PRIOR YR PPD INT  PPD INT IND GPM ORG
  128,000          0          128,000.00                       263 93 5084        0.00          0           0             0

ASSUM-DT XFER-DEED FHA-SEC/NUM   LIP PAYOFF FC-TRK-SW YE-ACQ-RPT/DATE   SALE-ID EXEMPT PLGD-LN PMT-OPT CALC-METH ELOC BNKRPCY CH/DT


PMT PERIOD  1098-DET-HIST  POINTS-PAID/RPTG YR  SUPPR-MICR-STMT  DI-NOT-RPT-YR  REAS CAUS  RI-HDR-SW  1ST-DUE-DT  REO STAT/COMPL DT
   12           N                     .00                         Y                                       11-01

IOE CREDIT YTD/W-H SW/W-H BALANCE    IORE CREDIT YTD/W-H SW/W-H BALANCE   CONSTR CD   NO PURGE FLAG/YR   BNKRPT STAT   LAST DEF DUE
     .00              .00                  .00             .00                                                           10-31

REC CORP ADV BAL   3RD REC CORP ADV BAL   FORECL WKST  CODE/REINSTATE DATE   INIT ESC STMT CODE / DATE   LOSS MIT STATUS/COMPL DATE
      .00                  .00

 DUE   PROC  TP SQ    AMOUNT    PRINCIPAL   PRINCIPAL  INTEREST    ESCROW     ESCROW    ADVANCE   STATUS    STATUS    UNEARNED     OTHER  CFD
DATE   DATE  TR NO   RECEIVED    PAID        BALANCE    PAID       PAID      BALANCE   BALANCE   AMOUNT    BALANCE   INT-BAL.   AMOUNTS DCT
BAL-FWD                                    128000.00
11-01 09-26 1 42  1      .00   128000.00-  128000.00      .00       .00       .00       .00       .00       .00        .00                  1
11-01 09-27 1 43  1      .00        .00    128000.00   293.33       .00       .00       .00       BATCH NJE EDIT-SEQ 040057                 1
                                                                                                 BATCH 119 EDIT-SEQ 056479
11-01 11-15 1 72  1   840.87     107.54    127892.46   733.33       .00       .00       .00       MPL-ID NESC                               1
                                                                                                                                 11-15-01 L
                                                                                                                                 40.00 AA
12-01 12-07 1 61  1  1155.45        .00    127892.46      .00   1155.45   1155.45   1155.45       BATCH 740 EDIT-SEQ 003188               1
09-01 12-07 3 52  2  CHECK #563538  .00    127892.46      .00   1155.45-     .00       .00       PAYEE CD 7BALB
12-01 12-17 1 52  1      .00        .00    127892.46      .00       .00       .00   1155.45       .00       .00        .00        42.04- 11
REQ-BY TOTALS     1,996.32                             1,026.66                                   .00                            2.04-
                               107.54                              1,155.45
```

OTHER AMOUNT CODES:
A=FHA-PENALTY    G=SER-INTEREST-PAID TO POOL   K=INT-DUE-PD       P=ACCRUED-IOE/IORE     U=REAPPLICATION-FEE    Y=HUD-FUND
B=BSC            H=FEE-AMT                      L=PD-THRU-DT       R=UE-INT-AMT           V=ESCROW-ADVANCE       Z=RESTRICTED-ESCROW
C=235-FEE        I=A-H-PD                       M=ADVANCE-EFF-DATE S=CR-LIFE-AMT          W=SUSPENSE             DI=DEFERRED-INT-BAL
F=MISC           J=LIFE-PD                      N=ADVANCE-MEMO-AMT T=ORIG-FEE-AMT         X=REPLACEMENT-RESERVE
AA=SER-FEE-PD    AB=DEFERRED-INT-PD             AC=LIFE-DEF-INT-PD AD=CHECK-NO            AE=DEFERRED-INT-LTD-PD AF=LIFE-DEFERRED-INT-LTD-PD
AG=SUB-CODE      AJ=DEF-INT-ADJ-FLAG           AK=ADV-AMT-RECD     AL=TRAN-SOURCE         AM=IOC-SPEC-INT-PD AN=NON-REC-CORP-ADV  AP=DATE-STAMP
STAMP  AR=MTGR-REC-CORP-ADV  AS=PREV-POSTED     AT=3RD-REC-CORP-ADV AY=ADJ YE 1098 IND                                         AQ=TIME-
FEE CODES:       1=LATE-CHARGE 2=BAD-CK-FEE     3=CHG-OWNER

EXHIBIT
5

tabbies

MATX 4

CAVTON FINANCIAL SERVICES CORP  LOAN HISTORY Y-T-D INV FT/ CAT 049 INV# F678379594 T13 12/31/01
PAGE 3467

LN#  2035482  RACHEL WILSON

202 W CORA LEE                      SOUTH PADRE ISLAND      TX 78597      EMP 0   POF0
                                                                          0000

1ST MTGE PRIN  2ND MTGE PRIN  ESC BAL  REST ESC  SUSPENSE  ADV BAL  REPL RES  HUD BAL  LC BAL  INT  DUE DUE DATE HUD PRT OF M
127,892.46    .00            .00      .00       .00       1,155.45  .00      .00      42.04   .00  12-01-01  .00 09 4

P & I 1ST  P&I 2ND  CO TAX  CITY TAX  HAZ INS  M I P  LIEN  BSC  A & H   LIFE  MISC  REP RES  TOT PAYMT INT RATE DT BM
840.87    .00      .00     .00       .01      .00    .00   .00  A .00 0  .00   .00   .00      840.88   .0687500  1 1

1ST ORIG MTG  2ND ORIG MTG     PRIN BAL BEG  INT IND  CAP FLAG  MTGR SSN        DEF INT BAL  PRIOR YR PPD INT  PPD INT IND  GPM ORG
128,000      0               128,000.00                        263 93 5084                0.00         0.00    0        0

ASSUM-DT XFER-DEED FHA-SEC/NUM    LIP PAYOFF FC-TRK-SW YE-ACQ-RPT/DATE   SALE-ID EXEMPT PLGD-LN PMT-OPT CALC-METH ELOC BNKRPCY CH/DT

PMT PERIOD  1098-DET-HIST  POINTS-PAID/RPTG YR  SUPPR-MICR-STMT  DI-NOT-RPT-YR  REAS CAUS  RI-HDR-SW  1ST-DUE-DT  REO STAT/COMPL DT
12          N              .00                  Y                                                     11-01

IOE CREDIT YTD/W-H SW/W-H BALANCE   IORE CREDIT YTD/W-H SW/W-H BALANCE   CONSTR CD   NO PURGE FLAG/YR   BNKRPT STAT   LAST DEF DUE
.00               .00              .00               .00                                                           10-31

REC CORP ADV BAL   3RD REC CORP ADV BAL    FORECL WKST CODE/REINSTATE DATE   INIT ESC STMT CODE / DATE   LOSS MIT STATUS/COMPL DATE
.00               .00

| DUE PROC TP SQ | AMOUNT | PRINCIPAL | PRINCIPAL | INTEREST | ESCROW | ESCROW | ADVANCE | STATUS | STATUS | UNEARNED | OTHER | CFD |
| DATE DATE TR NO | RECEIVED | PAID | BALANCE | PAID | PAID | BALANCE | BALANCE | AMOUNT | BALANCE | INT-BAL. | AMOUNTS | DCT |
| BAL-FWD | | | 128000.00 | | | | | | .00 | | | |
| 11-01 09-26 1 42 1 | .00 | 128000.00- | 128000.00 | .00 | .00 | .00 | .00 | | .00 | | | 1 |
| 11-01 09-27 1 43 1 | .00 | .00 | 128000.00 | 293.33 | .00 | .00 | .00 | BATCH NJE EDIT-SEQ 040057 | .00 | | | 1 |
| 11-01 11-15 1 72 1 | 840.87 | 107.54 | 127892.46 | 733.33 | .00 | .00 | .00 | BATCH 119 EDIT-SEQ 056479 | .00 | | | 1 |
| | | | | | | | | MPL-ID NESC | | | | |
| | | | | | | | | | | 11-15-01 L | | |
| | | | | | | | | | | 40.00 AA | | |
| 12-01 12-07 1 61 1 | 1155.45 | .00 | 127892.46 | .00 | 1155.45 | 1155.45 | 1155.45 | BATCH 740 EDIT-SEQ 003188 | .00 | | | 1 |
| 09-01 12-07 3 52 2 | CHECK #563538 | | | | 1155.45- | .00 | | | | | | |
| 12-01 12-07 1 52 1 | .00 | .00 | 127892.46 | .00 | 1155.45- | .00 | 1155.45 | PAYEE CD 7BALB | .00 | .00 | 42.04- 11 | |

REQ-BY TOTALS   1,996.32            1,026.66                                    .00                      2.04-
                          107.54                      1,155.45

OTHER AMOUNT CODES:
A=FHA-PENALTY   G=SER-INTEREST-PAID TO POOL   K=INT-DUE-PD      P=ACCRUED-IOE/IORE      U=REAPPLICATION-FEE     Y=HUD-FUND
B=BSC           H=FEE-AMT                      L=PD-THRU-DT      R=UE-INT-AMT            V=ESCROW-ADVANCE        Z=RESTRICTED-ESCROW
C=235-FEE       I=A-H-PD                       M=ADVANCE-EFF-DATE  S=CR-LIFE-AMT        W=SUSPENSE              DI=DEFERRED-INT-BAL
F=MISC          J=LIFE-PD                      N=ADVANCE-MEMO-AMT  T=ORIG-FEE-AMT       X=REPLACEMENT-RESERVE
AA=SER-FEE-PD   AB=DEFERRED-INT-PD             AC=LIFE-DEF-INT-PD  AD=CHECK-NO          AE=DEFERRED-INT-LTD-PD  AF=LIFE-DEFERRED-INT-LTD-PD
AG=SUB-CODE     AJ=DEF-INT-ADJ-FLAG           AK=ADV-AMT-RECD     AL=TRAN-SOURCE       AM=IOC-SPEC-INT-PD AN=NON-REC-CORP-ADV  AP=DATE-STAMP  AQ=TIME-
STAMP  AR=MTGR-REC-CORP-ADV  AS=PREV-POSTED  AT=3RD-REC-CORP-ADV  AY=ADJ YE 1098 IND
FEE CODES:      1=LATE-CHARGE  2=BAD-CK-FEE  3=CHG-OWNER

**MATX 5**

MATRIX FINANCIAL SERVICES CORP.
MORTGAGE LOAN HISTORY YEAR TO DATE

PAGE    37608

LN#    2035482   RACHEL WILSON

P.O. BOX 2042          SOUTH PADRE ISLAND   TX 78597     0000

| FIRST MORTGAGE | SECOND MORTGAGE | ESCROW BALANCE | RESTRICTED ESCROW | SUSPENSE BALANCE | ADVANCE BALANCE | REPLACEMENT RESERVE | HUD FUND | LATE CHARGES | INTEREST DUE | DISCOUNT BALANCE | DEFICIT BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 |

| FIRST CONSTANT | SECOND CONSTANT | COUNTY TAX | CITY TAX | HAZARD INSURANCE | MIP | LIEN | MONTHLY ESCROW | BSC AMT | A & H INS AMT | INS CODE | LIFE INS AMT | INS CODE | REPLACEMENT AMT | MISC CODE | MISC AMT | CODE | TOTAL PAYMENT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | 0 | .00 | 0 | .00 | 0 | .00 | 0 | 840.87 |

| HUD PART | 235 FEE | NET PAYMENT | BILL MODE | BANK TRANSIT | CHECKING ACCOUNT NO | PAYMENT FREQUENCY | DISTRIBUTION TYPE | INTEREST RATE | INVESTOR | INVESTOR CATEGORY | INVESTOR LOAN NO | TYPE LOAN | ARM PLAN | SERVICE FEE | NEXT PYMT NO |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| .00 | .00 | 840.87 | 1 | 00000000 | | M | 1 | .0687500 | F17 | 049 | 1678379594 | 13 | | .00000000 | 3 |

| DELQ CNT | BAD CK COUNT | L-C RATE | FHA SECT | FHA CASE NUMBER | MATURITY DATE | LOAN DATE | DUE DATE | STATE COUNTY | CITY COUNTY | MAN OFFICE | SHORT NAME | PHONE NO. | P C P F N A L A E R K F C T N F H M | TERM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | | .00 | | 000-000-000-026 | 10-31 | 09-19-01 | 01-01-02 | 42 061 | 0000 | 09 | 4 R WILSON | 9567613105 | T 0 3 0 0 8 0 0 0 | 360 |

| 1ST ORIG MTG | 2ND ORIG MTG | PRIN BAL BEG | INT IND | CAP FLAG | MTGR SSN | DEF INT BAL | PRIOR YR PPD INT | PPD INT IND | GPM ORG |
|---|---|---|---|---|---|---|---|---|---|
| 128,000 | 0 | 127,892.46 | | | 263 93 5084 | 0.00 | 0.00 | 0 | 0 |

ASSUM-DT XFER-DEED FHA-SEC/NUM    LIP PAYOFF FC-TRK-SW YE-ACQ-RPT/DATE    SALE-ID EXEMPT PLGD-LN PMT-OPT CALC-METH ELOC BNKRPCY CH/DT

| PMT PERIOD | 1098-DET-HIST | POINTS-PAID/RPTG YR | SUPPR-MICR-STMT | DI-NOT-RPT-YR | REAS CAUS | RI-HDR-SW | 1ST-DUE-DT | REO STAT/COMPL DT |
|---|---|---|---|---|---|---|---|---|
| 12 | N | .00 | | Y | | | 11-01 | |

| IOE CREDIT YTD/W-H | SW/W-H BALANCE | IORE CREDIT YTD/W-H | SW/W-H BALANCE | CONSTR CD | NO PURGE FLAG/YR | BNKRPT STAT | LAST DEF DUE |
|---|---|---|---|---|---|---|---|
| .00 | .00 | .00 | .00 | | | | 10-31 |

REC CORP ADV BAL    3RD REC CORP ADV BAL    FORECL WKST CODE/REINSTATE DATE    INIT ESC STMT CODE / DATE    LOSS MIT STATUS/COMPL DATE
.00              .00

| DUE DATE | PROC DATE | TP TR | SQ NO | AMOUNT RECEIVED | PRINCIPAL PAID | PRINCIPAL BALANCE | INTEREST PAID | ESCROW PAID | ESCROW BALANCE | ADVANCE BALANCE | STATUS AMOUNT | STATUS BALANCE | UNEARNED INT-BAL. | OTHER AMOUNTS | CFD DCT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BAL-FWD | | | | | | 127892.46 | | | .00 | 1155.45 | | | | | |
| 12-01 | 01-11 | 1 63 | 1 | 968.61 | .00 | 127892.46 | .00 | 968.61 | 968.61 | 1155.45 | .00 | .00 | .00 | | 1 |
| | | | | DESCRIPTION 7BALB | | | | POL CANC | | | | | | | |
| | | | | | | | | | | | BATCH 155 EDIT-SEQ 013440 | | | |
| 12-01 | 01-11 | 1 68 | 2 | .00 | .00 | 127892.46 | .00 | 968.61- | .00 | 186.84 | .00 | .00 | .00 | | 1 |
| | | | | | | | | | | | | | | 968.61 V | |
| | | | | | | | | | | | BATCH 155 EDIT-SEQ 013440 | | | |
| 12-01 | 01-16 | 1 52 | 1 | .00 | .00 | 127892.46 | .00 | .00 | .00 | 186.84 | .00 | .00 | .00 | 42.04- 11 | |
| 12-01 | 01-31 | 1 72 | 1 | 840.87 | 108.15 | 127784.31 | 732.72 | .00 | .00 | 186.84 | .00 | .00 | .00 | | 1 |
| | | | | | | | | | | | MPL-ID NESC | | | | |
| | | | | | | | | | | | | | | 01-31-02 L | |
| | | | | | | | | | | | | | | 39.97 AA | |
| 01-02 | 02-01 | 1 68 | 1 | .00 | .00 | 127784.31 | .00 | 186.84- | 186.84- | .00 | .00 | .00 | .00 | | 1 |
| | | | | | | | | | | | BATCH 752 EDIT-SEQ 099018 | | | |
| | | | | | | | | | | | | | | 186.84 V | |

**MATX 6**

LOAN-NO (CONT\D)                    MORTGAGE FINANCIAL SERVICES CORP                                    PAGE    37609
                                    MORTGAGE LOAN HISTORY YEAR TO DATE

LN#    2035482

| DUE DATE | PROC DATE | TP TR | SQ NO | AMOUNT RECEIVED | PRINCIPAL PAID | PRINCIPAL BALANCE | INTEREST PAID | ESCROW PAID | ESCROW BALANCE | ADVANCE BALANCE | STATUS AMOUNT | STATUS BALANCE | UNEARNED INT-BAL. | OTHER AMOUNTS | CFD DCT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01-02 | 02-01 | 1 | 56  2 | .00 | 127784.31 | .00 | .00 | 186.84 | .00 | .00 | | | | | 1 |
| 01-02 | 02-01 | 1 | 32  3 | .00 | .00 | .00 | .00 | .00 | .00 | .00 | BATCH XFR EDIT-SEQ 999999 | | .00 | 84.08 | 011 |
| 01-02 | 05-09 | 1 | 73  1 | 20.00 | .00 | .00 | .00 | .00 | .00 | .00 | | | .00 | 20.00 | 41 |
| | | | | | | | | | | | BATCH 425 EDIT-SEQ 140557 | | | | |

REQ-BY TOTALS      1,829.48                           732.72                                            .00                                    1,257.46
      Y/E                  127,892.46                          .00

OTHER AMOUNT CODES:
A=FHA-PENALTY     G=SER-INTEREST-PAID TO POOL   K=INT-DUE-PD        P=ACCRUED-IOE/IORE    U=REAPPLICATION-FEE      Y=HUD-FUND
B=BSC             H=FEE-AMT                      L=PD-THRU-DT        R=UE-INT-AMT          V=ESCROW-ADVANCE         Z=RESTRICTED-ESCROW
C=235-FEE         I=A-H-PD                       M=ADVANCE-EFF-DATE  S=CR-LIFE-AMT         W=SUSPENSE               DI=DEFERRED-INT-BAL
F=MISC            J=LIFE-PD                       N=ADVANCE-MEMO-AMT  T=ORIG-FEE-AMT        X=REPLACEMENT-RESERVE
AA=SER-FEE-PD     AB=DEFERRED-INT-PD             AC=LIFE-DEF-INT-PD  AD=CHECK-NO  AE=DEFERRED-INT-LTD-PD  AF=LIFE-DEFERRED-INT-LTD-PD
AG=SUB-CODE       AJ=DEF-INT-ADJ-FLAG  AK=ADV-AMT-RECD  AL=TRAN-SOURCE  AM=IOC-SPEC-INT-PD  AN=NON-REC-CORP-ADV   AP=DATE-STAMP  AQ=TIME-
STAMP  AR=MTGR-REC-CORP-ADV  AS=PREV-POSTED  AT=3RD-REC-CORP-ADV  AY=ADJ YE 1098 IND  AZ=CHOICES-PD
FEE CODES:        1=LATE-CHARGE  2=BAD-CK-FEE   3=CHG-OWNER

**MATX 7**

```
ICCSFICH-551                 M A T R I X  F I N A N C I A L  S E R V I C E S  CORP                     10/12/02
  .        ↓             COLLECTIONS/CUSTOMER SERVICE LOAN ACTIVITY MICROFICHE               PAGE  105307
                              FOR THE TIME PERIOD 07/01/00 THRU 09/30/02
------------------------------------------------------------------------------------------------------------
LOAN         MORTGAGOR             ADDRESS                        ORIG AMT     INT RATE  LOAN TYPE
NUMBER         NAME                CITY               ST ZIP      PRIN BAL    TOTAL PMT    AGE
------------------------------------------------------------------------------------------------------------
2035482      RACHEL WILSON         202 W CORA LEE               128000.00     6.87500  13  CONV. RES
                                   SOUTH PADRE ISLA TX 78597         0.00      840.87  01Y 01M
```

```
                     ENTRY                    LTR ID/
                     TYPE     DATE    USER    CMT CODE   ACTIVITY DESCRIPTION
                     -------------------------------------------------------------------------------
                     LOG    06/04/02   227               SINCE CHERYL CHIEG IS MANAGING THE ISSUE OF PMTS A
                                                         LLEGEDLY CASHED BY MFSC SUBSEQUENT TO S/R TO CHASE
                                                         , WILL NOT ADD TO DEFAULT TRACKING OR LEGAL TRACKI
                                                         NG SINCE NOT A SUIT.
                     LOG    06/03/02   229               ADVISED ATTNY THAT WE HAVE BEEN RECEIVING ALL THE
                                                         MAIL BACK. ADVISED WE NEED EVIDENCE OF ANY CHECKS
                                                         THAT WE CASHED VS FRWDING TO CHASE. ADVISED THAT
                                                         CHASE WOULD HAVE HAD THE SAME ADDRESS. HIS NAME IS
                                                         MICHAEL RODRIGUEZ 956-574-9333 CELL 956-454-9097
                     COL    05/31/02   302               BORR AFTER THE LOAN HAD BEEN SERVICE RELEASED TO
                                                         CHASE, NOW CHASE HAS BORR IN F/C; GV LETTER TO ANN
                                                         SCHONBERGER/CUSTOMER SERVICE DEPT TO HANDLE.  SC
                     COL    05/31/02   302               RCVD LETTER FROM BORR ATTY MICHAEL RODRIGUEZ REQUES
                                                         TING OUR COOPERATION IN RESOLVE A DISPUTE AS TO THE
                                                         DELINQUENCY OF THIS ACCT. MATRIX CASHED 2 PMTS FROM
                     COL    05/31/02   302               RCVD DISPUTE FROM BORROWERRFOR PAYMENTS
                     LOG    05/17/02   279               B WANTS HIST FAXED @956-504-9265, 270 ALREADY ORDE
                                                         RED HIST
                     LOG    05/17/02   270               B CIN SD SHE WANTS HIST I PRINTED HIST WILL SEND 2
                                                         HER WHEN WE RECV IT. SHE SD WE\VE BEEN CASHING HE
                                                         R CHECKS ADVISED HER SHE\S BEEN TRNSFRD TO CHASE S
                                                         HE SD SHE\S IN FORECL WITH CHASE CAUSE WE\VE BEEN
                                                         CASHING HER CHKS SHE WAS IN DEFAULT WITH US AS WEL
                                                         L.. SHE\S REQ A LTR SHOWING THAT WE TRNSFRD .
                                                         B GOT DISC...... ADVISE B HIST WILL BE MAILED 2 HE
                                                         R AS SOON AS I RECV IT......
                     LET    05/08/02   270     CS002     016 - check a box #1
                     LET    05/08/02   270     CS002     016 - check a box #1
                     LOG    05/02/02   277               RCVD CK #728 FOR $20/ORDERED VO/FORWARDED CK ON TO
                                                         229
                     LOG    05/02/02   249     RECCK     RECD CK#728 FOR 20.00 FORWARDED TO 277
                     LET    04/16/02   MAX     MX004     001 - MX004          04/16/02
                     LOG    04/15/02   280               TITCO CALLED IN AND INQUIRED ABOUT TRANSFER OF LOA
                                                         N. CONFIRMED TRANSFER OF LOAN .
                     LOG    04/15/02   280     VERADD    VERIFIED/CORRECTED THE TELEPHONE # & MAILING ADDRS
                     LOG    04/15/02   264     VOCREQ    REQUIREMENTS REGARDING REQUEST FOR VOC
                     LOG    03/09/02   277     ADDCHG    CUST REQ CHANGE OF ADDRESS
                     LOG    03/09/02   277     RETCPN    RECVD CPN BOOK BACK NEED NEW ADDRESS
                     COL    03/01/02   332               CERT MAIL RTN
                     LOG    02/23/02   277     RETYER    RECEIVED 1098 YEAR END STATEMENT/NEED NEW MAIL ADD
                     LOG    02/23/02   277     RECRML    RECEIVED RETURNED MAIL
                     COL    02/14/02   ***       .         ORIGINAL OWNER      CONDITION ON 020402   MFSPIC
                     LOG    02/06/02   277     RECRML    RECEIVED RETURNED MAIL
                     LOG    02/06/02   277     RECRML    RECEIVED RETURNED MAIL
                     LOG    02/06/02   277     RECRML    RECEIVED RETURNED MAIL
```

EXHIBIT

6

tabbies®

**MATX 2**

ICCSFICH-551
M A T R I X   F I N A N C I A L   S E R V I C E S   C O R P                    10/12/02
COLLECTIONS/CUSTOMER SERVICE LOAN ACTIVITY MICROFICHE          PAGE  105308
FOR THE TIME PERIOD 07/01/00  THRU  09/30/02

```
2035482                LOG  02/06/02  277  RECRML   RECEIVED RETURNED MAIL
                       LET  02/06/02  277  CS009    012 - ck a box w/comments
                       LOG  02/01/02  277  RETYER   RECEIVED 1098 YEAR END STATEMENT/NEED NEW MAIL ADD
                       LOG  01/31/02  277  RETURN   MAIL REC\D, NEED NEW MAILING ADDRESS
                       LOG  01/24/02  207  RECESC   ANALYZED LN PER SPVR REQUEST - NON-ESCROW LN W/
                                                    FOF PD 12/07/01 $1155.45. PARTIAL REFUND POSTED
                                                    01/11/02 $968.61. REMAINING AMT OF $186.84 TO BE
                                                    COLLECTED FROM BORROWER. WILL ADV CHASE DUE TO
                                                    XFR.
                       COL  01/23/02  326           MAIL RETURNED
                       COL  01/22/02  ***            OS002 NOI TO F/C-Mtgr 1&2 mail LETTER SENT
                       COL  01/22/02  ***            OS012 NOI F/C-Mtgr 1&2 MAD Cer LETTER SENT
                       LET  01/22/02  CPI  OS002    036 - NOI TO F/C-MtgrM 0 0 0R020122
                       LET  01/22/02  CPI  OS012    012 - NOI F/C-Mtgr 1&M 0 0 0R020122
                       COL  01/19/02  DVX                     NO ANSWER
                       LET  01/08/02  301  CO072    027 - 2 mo default/conv
                       LET  01/07/02  BAL  BF007    001 - 091901 FPCNCL       01/04/02
                       COL  01/03/02  ***           NOTICE     FINAL    (P-199)
                       COL  01/03/02  326           MAIL RETURNED
                       LET  12/31/01  ***  YE101    A00 - RACHEL WILSON
                       COL  12/28/01  ***           SCORE 029  122801 AGT RPRO DAYS DEL 027
                       COL  12/17/01  ***           NOTICE     DELINQUENT (P-198)
                       LET  12/11/01  BAL  BF030    001 - 091901 FP-CERT       12/10/01
                       LET  11/15/01  BAL  BF002    001 - 091901 SNDNVINSFLD   11/14/01
                       LET  10/18/01  BAL  BF001    001 - 091901 FSTNVINSFLD   10/17/01
```

**MATX 3**

Dat    Notice : 04/16/02



**MATRIX FINANCIAL SERVICES CORPORATION**

RACHEL WILSON

P.O. BOX 2042
SPI, TX  78597

RE:    Loan Number : 2035482
Property Address : 202W CORA LEE
SOUTH PADRE ISLAND, TX  78597

Dear Mortgagor:

As you have previously been advised, the servicing of your mortgage loan has been transferred form Matrix Financial Services Corporation, therefore, we are returning your check number 1665 in the amount of $840.87 so that you may forward it to your new servicer.

If you have any questions regarding this matter, please contact our Customer Service Department at 1-800-243-6372.

Sincerely,
Customer Service Department
Matrix Financial Services Corporation

Enclosure

mailing Address - PO BOX 2042
SPI x

RACHEL L. WILSON AND
CHARLES A. BROMMER

1665

Date 4/9/02

PAY TO THE ORDER OF    Matrix Finances 0    $ 840.87

Eight hundred forty

BTCU
YOUR COMMUNITY CREDIT UNION

For Loan # 2035482    Rachel Wilson

⑈114978093⑈:000327⑈000⑈ 1665

EXHIBIT
7
tabbies